# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ALEXIS SCHARP,

      Plaintiff,

                                       Case No:

v.

                                       Hon.

VAN BUREN PUBLIC SCHOOLS

      Defendant.

---

Batey Law Firm, PLLC
SCOTT P. BATEY (P54711)
RYAN FOWLER
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, MI  48025
(248) 540-6800-telephone
(248) 540-6814-fax
sbatey@bateylaw.com
rfowler@bateylaw.com

---

## COMPLAINT AND JURY DEMAND

NOW COMES, Plaintiff, Alexis Scharp (hereinafter "Scharp"), by and through her attorney's Scott P. Batey and the Batey Law Firm, PLLC, and for her Complaint against Defendant, Van Buren Public Schools sates as follows:

1.     Plaintiff, Alexis Scharp is a resident of the township of Canton, County of Wayne and State of Michigan.

2.     Defendant, Van Buren Public Schools is a government entity duly

authorized to operate as a public-school district in the County of Wayne and State of Michigan.

3.      Jurisdiction and venue are proper in the District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) & (c).

4.      The amount in controversy exceeds $75,000.00, exclusive of interest and costs, and jurisdiction and venue is otherwise proper in this Court.

5.      Plaintiff brings this action for damages arising out of the acts and/or omissions of Defendant constituting unlawful discrimination/harassment consisting of sexual harassment and retaliation in violation of Title VII and the Michigan Elliott-Larsen Civil Rights Act, MCLA, §37.2101, *et seq*. which resulted in emotional and economic damages to Plaintiff.

## GENERAL ALLEGATIONS

6.      Plaintiff incorporates by reference paragraphs 1 through 5 of the Complaint as though fully set forth herein.

7.      Plaintiff was hired by Van Buren Public Schools as a bus driver in or around September of 2017.

8.      Almost immediately after Plaintiff started working for Defendant, a co-worker named Ryan Hughes (hereinafter "Hughes") began making constant comments that were sexual in nature about Plaintiff's appearance in an attempt to seduce Plaintiff into a sexual relationship.

2

9.     When Hughes first met Plaintiff, he asked her invasive personal questions about her relationship status, and whether or not Plaintiff's fiancé would be upset if he found out that Plaintiff was talking with Hughes.

10.     Plaintiff was immediately concerned with Hughes' behavior towards her and never reciprocated or engaged with Hughes when he would make inappropriate comments about her appearance, and let him know that his comments were unwelcome.

11.     At first, Plaintiff's strategy was to avoid Hughes as much as possible and remain professional.

12.     Despite Plaintiff's efforts to avoid Hughes, he continued to make sexual comments about Plaintiff's appearance and attempted to get hugs from Plaintiff on a daily basis, which Plaintiff always refused.

13.     Hughes continued to escalate his unwanted and unwelcomed contact with Plaintiff by hunting her phone number down on Facebook and routinely calling and texting her.

14.     Plaintiff let Hughes know his comments were unwelcomed and made her uncomfortable by either completely ignoring Hughes, or by giving terse one-word answers to him without engaging in conversation.

15.     Hughes confronted Plaintiff at work and asked her why she was not responding to his messages and phone calls, and she made it very clear to Hughes

that she had no interest in speaking with him outside of work, and she especially had no interest in a sexual relationship with him, and that his comments made her uncomfortable.

16.     After Plaintiff's unequivocal rejection, Hughes started to get more aggressive and hostile towards plaintiff.

17.     On several occasions after Plaintiff ignored his harassing messages and calls, Hughes called her a "bitch," or would say things like, "fuck you too."

18.     On several occasions, Hughes called Plaintiff on the phone, called her a bitch, and then immediately hung up.

19.     Hughes often followed up his unwanted abusive phone calls and text messages to Plaintiff with pleas for forgiveness, and Plaintiff always refused to engage with him in conversation.

20.     In or around November of 2017, Plaintiff began to report Hughes' sexual harassment to their supervisor, Kimberly Searey (hereinafter, "Searey"), but nothing was done and the harassment continued.

21.     Plaintiff complained to Searey a number of times, both verbally and in writing, but she never took steps to stop the harassment.

22.     In or around January of 2018, Hughes showed Plaintiff images of him having sex with other women and asked Plaintiff, "is this what you like?"

23.     On several occasions Hughes rubbed his body against Plaintiff while

4

passing her and claimed it was an accident.

24.    On several occasions Hughes made unwanted visits to Plaintiff's bus while she was waiting for school to end and made sexual comments about how Plaintiff was dressed, and asked sexual questions like, "when are you going to let me get that."

25.    After Plaintiff rejected Hughes, Plaintiff would often receive aggressive texts from Hughes calling her a bitch.

26.    Plaintiff again reported Hughes' inappropriate behavior to supervisor Searey, and again, no action was taken.

27.    On one occasion Hughes forcefully asked Plaintiff to request him as an aide, even though she didn't need one, and when Plaintiff refused, Hughes harassed Plaintiff with unwanted phone calls and text messages.

28.    On several occasions, Hughes invited plaintiff to personal events outside of work, and asked to get food with Plaintiff, which Plaintiff denied every time.

29.    On one occasion Hughes offered Plaintiff money, stating it was a gift, which Plaintiff rejected.

30.    On one occasion, while in line to clock out for their shift, Hughes grabbed Plaintiff's butt, and Plaintiff publicly shouted at Hughes.

31.    Hughes sent plaintiff a text message explaining that he was upset that

she put him on the spot by yelling at him, and Plaintiff responded with a long message explaining that Hughes' actions were unwanted and inappropriate.

32.   Plaintiff reported Hughes to supervisor Searey a third time, and again nothing was done, so Plaintiff decided to submit a complaint directly to Defendant's HR department.

33.   After reporting the severe and pervasive harassment that Plaintiff was experiencing from Hughes to HR, Plaintiff learned that supervisor Searey never submitted any of Plaintiff's complaints to HR and never took any action at all.

34.   Upon information and belief, supervisor Searey and Hughes were close friends and she deliberately ignored Plaintiff's complaints about Hughes.

35.   Shortly after Plaintiff submitted her complaint to HR, she learned that another female co-worker filed a similar complaint against Hughes for sexual harassment.

36.   After Plaintiff submitted her complaint to HR, Hughes was suspended, and ultimately given the opportunity to resign or be terminated, and Hughes chose to resign.

37.   After Hughes resigned, Plaintiff became the target of a petty campaign of intimidation and hostility amongst co-workers who were friends with Hughes, and Hughes himself.

38.   Hughes ignored directives to not speak with anyone about the

investigation into Plaintiff's complaint and instead approached several co-workers, students, and even parents and told them that Plaintiff was deliberately lying and trying to get him fired.

39.     Hughes reached out to Plaintiff's friends and tried to get them to put pressure on Plaintiff to drop the reports of harassment.

40.     Even after Hughes resigned, Plaintiff continued to be subjected to a hostile work environment because several co-workers who were friends with Hughes blamed Plaintiff for his forced resignation.

41.     One co-worker made several posts on Facebook calling Plaintiff a liar, asserting that she will lose her job.

42.     On several occasions, co-workers approached Plaintiff and asked her if she saw what was posted about her on social media the night before.

43.     Soon after Hughes resigned, several co-workers circulated a petition to reinstate Hughes, and called Plaintiff a liar.

44.     Plaintiff is still employed by Defendant, but she feels as though her character and reputation amongst co-workers has been completely destroyed due to rumors and lies that have been spread about her in retaliation for complaining of sexual harassment.

45.     Hughes lives in the same community as Plaintiff, and she continues to be paranoid about seeing him in public, and fears retaliation for reporting his

sexual harassment.

46.     During the time period in question, Defendant was Plaintiff's employer and Plaintiff was its employee within the meaning of Title VII of Civil Rights Act of 1964, and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, *et seq*.  Moreover, Defendant is responsible for all acts committed by its agents, representatives and employees within the scope of their employment.

47.     Defendant, through its agents, representatives and employees were predisposed to sexually harass and discriminate against Plaintiff on the basis of her sex and acted in accordance with that predisposition.

48.     Defendant's actions were intentional, or were carried out with reckless indifference to Plaintiff's rights and sensibilities.

49.     On August 20, 2019, the EEOC issued a Right to Sue letter against Van Buren Public Schools.

## COUNT I
## SEXUAL HARASSMENT

50.     Plaintiff incorporates by reference paragraphs 1 through 49 of the Complaint as though fully set forth herein.

51.     Pursuant to Title VII of Civil Rights Act of 1964, and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, *et seq*. Plaintiff is guaranteed the right to be free from discriminatory treatment and harassment from their employer and/or supervisors, based upon her sex.

52. Defendant created a hostile work environment for Plaintiff as a result of sex, Plaintiff's sex and her complaints of sexual harassment.

53. Defendant acted negligently in preventing or correcting the harassment by refusing to take any kind action, even after the harassment was reported to a supervisor on three separate occasions.

54. Defendant had both actual and constructive notice that it and its employees were creating an intimidating, hostile and offensive work environment for Plaintiff.

55. Despite having notice that Plaintiff was being discriminated against and sexually harassed, Defendant failed to take any remedial action.

56. The hostility and unwelcome treatment of Plaintiff by representatives and employees of Defendant and their failure to take any remedial action violate Title VII and the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

57. Defendant is an employer within Title VII and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, *et seq*.

58. Plaintiff has been subjected to an offensive and hostile work environment due to repeated and continuous harassment and discriminatory treatment based upon her sex by Defendant its employees and agents to the point where her status as an employee has been detrimentally affected.

59. The offensive and hostile work environment caused by Defendant

substantially interfered with Plaintiff's ability to do her job.

60.     Plaintiff is entitled to exemplary and compensatory damages pursuant to Title VII and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, *et seq*. as a result of each and every violation of the act, including costs and reasonable attorney's fees.

61.     Defendant and its agents, employees and representatives, breached and violated their duty to Plaintiff by reason of the following acts and/or omissions:

    a.  Violating the laws against discrimination by engaging in sexual harassment in the workplace;

    b.  Retaliating against employees who make complaints of discrimination and harassment; and

    c.  Failing to take serious and corrective action when informed by Plaintiff that the conduct towards her was unlawful.

62.     Defendant owed Plaintiff as a female employee, a duty to adequately advise their employees to refrain from discriminating against employees.

63.     Defendant, breached and violated their duty owed to Plaintiff, by reason of the following acts and/or omissions:

    a.  Failing to prevent or stop sexual harassment against Plaintiff causing a hostile work environment;

    b.  Taking adverse employment action against Plaintiff due to her sex; and

    c.  Retaliating against Plaintiff for her complaints of sexual harassment.

10

64.     As a direct and proximate result of the actions of Defendant, Plaintiff was the subject of discriminatory conduct on the part of Defendant.

65.     Because of the unlawful conduct of Defendant, and its agents and employees, and as a direct and proximate cause of such conduct, Plaintiff has suffered damages, including humiliation, embarrassment, outrage, mental anguish and anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits, and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendant in an amount in excess of $75,000.00, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate.

## COUNT II
## RETALIATION

66.     Plaintiff incorporates by reference paragraphs 1 through 65 of the Complaint as though fully set forth herein.

67.     Pursuant to Title VII and the Michigan Elliott-Larsen Civil Rights Act, MCLA 37.2201, *et seq.*, Plaintiff is guaranteed the right to be free from discrimination from her employer and/or supervisors based upon sex.

68.     Plaintiff's sex was a factor in Defendant's employment decisions.

69.     Defendant was Plaintiff's employer within the meaning of Title VII

and the Elliott-Larsen Civil Rights Act, MCLA 37.2201, *et seq*.

70.    During the course of her employment with Defendant, Plaintiff was subjected to constant unwelcome sexual harassment creating a hostile work environment by Defendant.

71.    The sexual harassment created a hostile work environment and had the purpose and/or effect of substantially interfering with Plaintiff's employment and/or creating an intimidating, hostile, and offensive employment environment.

72.    Plaintiff complained to her direct supervisor, as well as HR of Defendant, that she was being discriminated against due to her sex and that she was being subjected to a hostile work environment, thereby engaging in a protected activity.

73.    Defendant had actual and constructive notice that it was creating an intimidating, hostile and offensive work environment for Plaintiff.

74.    After Plaintiff was required to make numerous complaints Defendant to take action, Defendant finally investigated her allegations, suspended Hughes, and Hughes involuntarily resigned.

75.    After Hughes resigned, Plaintiff was retaliated against by co-workers who were sympathetic to Hughes, and their retaliation increased the hostile working environment.

76.    Plaintiff complained about the retaliation, but nothing was done to

stop or prevent the retaliation.

77.     As a proximate result of Defendant's retaliation of Plaintiff, Plaintiff has sustained injuries including, but not limited to, physical pain and suffering, mental anguish,  fright, shock, embarrassment, humiliation, mortification, outrage, anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendants in an amount in excess of $75,000.00, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate.

Respectfully submitted,

**BATEY LAW FIRM, PLLC**

By: /s/Scott P. Batey
    SCOTT P. BATEY (P54711)
    Attorney for Plaintiff
    30200 Telegraph Road, Suite 400
    Bingham Farms, Michigan 48025
    (248) 540-6800
    sbatey@bateylaw.com

Dated:  November 7, 2019

## <u>DEMAND FOR JURY TRIAL</u>

NOW COMES Plaintiff, Alexis Scharp, by and through her attorney's, Scott

P. Batey and the Batey Law Firm, PLLC, and hereby demands a trial by jury on all

issues allowed by law.

Respectfully submitted,

**BATEY LAW FIRM, PLLC**

By: /s/Scott P. Batey
    SCOTT P. BATEY (P54711)
    Attorney for Plaintiff
    30200 Telegraph Road, Suite 400
    Bingham Farms, Michigan 48025
    (248) 540-6800
    sbatey@bateylaw.com

Dated:  November 7, 2019